■ In the Matter of ROTTERDAM-MOHANASEN CENTRAL SCHOOL DISTRICT, Petitioner, v STATE DIVISION OF HUMAN RIGHTS, Respondent.—Proceeding instituted in this court pursuant to section 298 of the Executive Law to review an order of the State Human Rights Appeal Board, dated August 1, 1978, which affirmed an order of the State Division of Human Rights finding petitioner guilty of an unlawful discriminatory practice based on sex and awarding the employee her accrued sick leave pay. Complainant, a school teacher, informed the principal of Mohanasen High School in May, 1974 that she was pregnant and requested maternity leave to commence "at the termination of the disability period" and to conclude on August 31, 1975. Following various communications between the superintendent of petitioner school district and complainant, the superintendent, by letter, informed complainant that she had the option of taking either unpaid maternity leave for a period of time up to 15 months in length or of taking sick leave for the period of disability caused by pregnancy and childbirth. Complainant thereafter applied for maternity leave for the period of September, 1974

until September 1, 1975 and also stated that she would apply for sick leave from September through October, 1974 on the ground that her doctor certified that she should not work during that period. On October 12, 1974 complainant delivered her baby. Due to her delivery, she was certified by her doctor as disabled for the period of October 12, 1974 to November 26, 1974. Petitioner refused to pay complainant for her accrued sick leave during the period of her actual disability. Due to such refusal complainant filed a complaint with the State Division of Human Rights. After a hearing, the division found no evidence in the record to show that the option given by petitioner to pregnant teachers regarding sick leave was also applicable to absences caused by nonpregnancy-related disabilities. The division concluded that petitioner discriminated against the complainant because of her sex and awarded her an amount equal to her accrued sick leave for the period October 12, 1974 through November 26, 1974, plus interest. The order of the division was affirmed by the State Human Rights Appeal Board and the present proceeding was instituted. Initially, we would note that the burden was on complainant to prove by substantial evidence the truth of her allegations of unlawful discrimination *(Matter of McGrath v New York State Div. of Human Rights,* 52 AD2d 1027). Upon a review of the entire record, we find no sufficient proof as to the petitioner's comparable policies concerning nonpregnancy-related disabilities. Complainant failed in her burden of demonstrating petitioner's dissimilar treatment of other employees in regard to sick leave entitlement. Accordingly, there is not sufficient evidence on the record as a whole to support the board's decision and the order must be annulled (see *Matter of State Div. of Human Rights v Board of Educ.,* 40 NY2d 1021). Order annulled, without costs, and petition granted. Greenblott, J. P., Sweeney, Main and Herlihy, JJ., concur.

Staley, Jr., J., dissents and votes to confirm in the following memorandum. Staley, Jr., J. (dissenting). Kathleen A. Colarossi is a female who was employed as a high school teacher by petitioner. On April 16, 1975, she filed a complaint with respondent claiming that petitioner denied her equal terms, conditions and privileges of employment because of her sex. On May 30, 1974, complainant advised Dr. Saul Beck, Principal of the Mohonasen High School, that she was pregnant and requested maternity leave commencing at the termination of her disability period and concluding August 31, 1975. On June 11, 1974, James M. Randall, superintendent of the respondent school district, wrote complainant informing her that she could apply sick leave to cover her pregnancy-related absence. Thereafter, complainant had a conversation with Superintendent Randall who told her that she had the option of taking maternity leave without pay in lieu of sick leave. On June 14, 1974, complainant wrote Superintendent Randall stating that she wanted maternity leave to commence following her period of disability. On August 6, 1974, Superintendent Randall wrote complainant "that the provisions of the contract * * * provide for the option of taking either unpaid maternity leave for a period of time up to 15 months * * * or of taking sick leave for the period of disability caused by pregnancy and childbirth". On August 14, 1974, complainant wrote Superintendent Randall informing him that she was applying for maternity leave effective September, 1974. Complainant also stated that since her doctor advised her not to work from September through October of 1974, she was applying for sick leave for that period, since, in June of 1974, her doctor estimated her delivery date to be approximately September 25, 1974. Complainant had accumulated sick leave of 41 days as of September 1, 1974. The division found that, since there is no evidence in the record to show that the option

presented to claimant was applied in any other case of illness-related absence either by male or female, petitioner unlawfully discriminated against claimant because of her sex. The order directed petitioner to pay complainant an amount equal to the accrued sick leave for the period October 12, 1974 through November 26, 1974, with interest. The order further directed petitioner to deliver a written notice to all employees affected, as follows: "Maternity leave will carry the same pay, fringe benefits and employment status, for the period of actual disability, as leave for other non-occupational disabilities. Any policy, rule, regulation or contractual provision inconsistent with this statement is to be deemed amended to incorporate this statement." Claimant's request that her unpaid maternity leave should commence following her paid sick leave during her period of disability was fair and reasonable. Petitioner's demand that she take either unpaid maternity leave for 15 months, or take sick leave for the period of disability caused by pregnancy was unfair and unreasonable and patently discriminatory. The collective bargaining agreement which was in effect during the period involved herein provided for allowance and accrual of sick leave as follows: "Whenever sick leave has been exhausted, a personal leave without pay may be granted by the Board upon a request for such personal leave. Such personal leave shall be granted for the remaining duration of the illness but shall be for a period not to exceed one (1) year." It has been held that the Human Rights Law requires that a pregnant teacher who takes a pregnancy-related leave must be permitted to take advantage of her sick and sabbatical leave entitlements to the same extent as would be the case were she suffering from some other temporary physical disability. The rules of a school district regulating maternity leave were discriminatory where they treated pregnancy as a condition less liberally than all other physical conditions to which human beings are subject *(Union Free School Dist. No. 6 of Towns of Islip & Smithtown v New York State Human Rights Appeal Bd.,* 35 NY2d 371; *State Div. of Human Rights v Union Free School Dist. of Tarrytown,* 54 AD2d 928, mot for lv to app den 42 NY2d 802; *Board of Educ. v New York State Div. of Human Rights,* 45 AD2d 959; *Board of Educ. v New York State Div. of Human Rights,* 42 AD2d 49, affd 35 NY2d 673). I further disagree with the majority that there is insufficient evidence in the record, and that *Matter of State Div. of Human Rights v Board of Educ.* (40 NY2d 1021) is controlling. It should be noted that the *Draper* case involved enforcement proceedings instituted by the Division of Human Rights, and, further, that the board of education did not contest the determination that back pay should be paid to the teachers for accumulated sick leave, and, therefore, the claims of the complainants were fully satisfied. In *Draper,* this court modified the division's order by deleting the commissioner's provision regarding the usage of sick leave during an unpaid maternity leave, and substituting language which incorporated the mandatory option adopted by the board of education after the original order was issued. In affirming, the court of Appeals clarified the narrow scope of the decision. As so clarified, the scope of *Draper* was shown to be one of a standard of proof. The court stated (40 NY2d 1021, 1023, *supra):* "there is no sufficient proof as to the comparable policies of the Board of Education with respect to non-pregnancy-related disabilities". The court acknowledged that whether the *Draper* option would or would not be impermissible discrimination could depend upon whether or not the option were applied to disabilities not related to pregnancy. "There is no basis in this record for making a judgment as to whether an alternative leave of absence option is or is not available for non-pregnancy-related disabilities. More precisely, it cannot be

determined whether there is any option at all, or, if a choice is open, whether its terms correspond to those offered to pregnant teachers as an alternative, and in particular whether sick leave credits may be applied against a leave of absence. If substantial parallelism be assumed then it may forcefully be argued that there is no discrimination; on the other hand if it were to be taken that there is no such parity an equally persuasive argument may be made that there is impermissible discrimination." (pp 1023-1024.) The record here contains clearer evidence than the record in *Draper.* Exhibits Nos. 4 and 5, excerpts from the collective bargaining agreement, set forth the facts as to usage and availability of both sick leave and unpaid maternity leave. Complainant had merely requested those fringe benefits available to her under the terms of that agreement which were available according to its terms to other employees for non-maternity-related disabilities. In addition, in his dissenting opinion in the *Draper* case, Judge Cooke stated (p 1024): "Irrespective of the procedural setting of the matter, it imposes an unreasonable and unnecessary burden on the division to conclude at this point that there is not sufficient evidence in the record to support the determination of the division when, prior to the start of this enforcement proceeding, the Board of Education could have supplied proof of its policies. Indeed, to conclude that there is insufficient evidence because the division has not shown that such policies do not exist, is to assume, in effect, that such policies do exist. If the same choice is in fact required with respect to any other disabilities, the burden of coming forward should be on the Board of Education which should have advanced proof thereof, perhaps thereby ending the controversy (see *McDonnell Douglas Corp. v Green,* 411 US 792, 802-803). Viewing the record in this way, there is a more than sufficient basis for the division to have inferred that no such policies exist with respect to any non-pregnancy-related disabilities (see *State Div. of Human Rights v Wagner,* 39 NY2d 865)." The order finding petitioner guilty of an unlawful discriminatory practice based on sex should be affirmed.