DEPARTMENT OF CIVIL RIGHTS ex rel PETERSON v BRIGHTON
AREA SCHOOLS

Docket No. 102292. Submitted June 22, 1988, at Lansing. Decided
September 8, 1988.

Following the birth of her child, Elaine Peterson, a teacher
employed by the Brighton Area Schools Board of Education,
applied for a paid disability leave of absence to be immediately
followed by an unpaid leave of absence for infant care. The
board approved the request for the paid leave of absence but
denied the request for the unpaid leave of absence, citing the
provisions of the collective bargaining agreement between the
board and Peterson's labor union, the Brighton Education
Association. The collective bargaining agreement defined "dis-
ability" to include any disability caused or contributed to by
pregnancy, miscarriage, abortion or childbirth and allowed
unpaid leaves of absence for infant care, but provided that an
unpaid leave of absence for infant care is subject to approval by
the board if such leave of absence is immediately preceded by a
paid leave of absence for disability. The collective bargaining
agreement further provided that the right to disability benefits
is relinquished if the paid leave of absence for disability is
immediately followed by an unpaid leave of absence for infant
care. Peterson subsequently requested and was granted an
unpaid leave of absence for infant care for the entire period of
her absence. Peterson filed a sex discrimination complaint
against the Brighton Area Schools with the Department of
Civil Rights, which subsequently filed a sex discrimination
claim against the Brighton Area Schools with the Michigan
Civil Rights Commission. The commission determined that the
policy of prohibiting teachers from taking consecutive preg-

REFERENCES

Am Jur 2d, Civil Rights §§ 154 *et seq.*, 177-181, 261.

Am Jur 2d, Job Discrimination §§ 686-696.

Disparate impact test for sex discrimination in employment under
Title VII of Civil Rights Act of 1964 (42 USCS secs. 2000e *et seq.*).
68 ALR Fed 19.

Pregnancy leave or maternity leave policy, or lack thereof, as
unlawful employment practice violative of Title VII of the Civil
Rights Act of 1964 (42 USCS secs. 2000e *et seq.*). 27 ALR Fed 537.

nancy disability and infant care leaves of absence constitutes sex discrimination under the Civil Rights Act. On appeal, the Livingston Circuit Court, Daniel A. Burress, J., affirmed the commission. The Brighton Area Schools appealed.

The Court of Appeals *held:*

Two theories of recovery, disparate impact and disparate treatment, have been recognized under the federal and state civil rights acts. Under the disparate treatment theory, proof of discriminatory motive is required in order to establish a prima facie case. To the extent the Civil Rights Commission based its decision on the theory of disparate treatment, the decision is in error since a discriminatory motive behind the challenged policy was neither established nor can such motive be inferred. However, reversal is not required since discrimination was established under the disparate impact theory of recovery, which does not require proof of discriminatory motive and applies to practices which are facially neutral in their treatment of different groups but that, in fact, fall more harshly on one group than on another and cannot be justified by business necessity. The challenged policy in this case has a harsh effect on women who give birth to children since it is only they who must choose between a paid disability leave of absence and an unpaid infant care leave of absence.

Affirmed.

1. CIVIL RIGHTS — APPEAL — CIRCUIT COURT — COURT OF APPEALS.

An appeal to a circuit court from a final order of the Civil Rights Commission is a trial de novo and, on further appeal to the Court of Appeals, the Court of Appeals must make an independent review of the whole record but will not substitute its judgment for that of the circuit court unless it is left with a definite and firm conviction that a mistake has been made.

2. CIVIL RIGHTS — DISPARATE IMPACT — DISPARATE TREATMENT.

Two theories of recovery, disparate impact and disparate treatment, have been recognized under the federal and state civil rights acts (42 USC 2000e-2; MCL 37.2202; MSA 3.548[202]).

3. CIVIL RIGHTS — DISPARATE TREATMENT.

Disparate treatment for purposes of the Civil Rights Act is established upon a showing that the plaintiff was a member of a class entitled to protection under the act and that, for the same or similar conduct, he was treated differently than one who was a member of a different group.

4. CIVIL RIGHTS — DISPARATE IMPACT.

Under the disparate impact theory of recovery pursuant to the

Civil Rights Act, proof of a discriminatory motive is not required; disparate impact involves practices which are facially neutral in their treatment of different groups but that, in fact, fall more harshly on one group than on another and cannot be justified by business necessity.

5. CIVIL RIGHTS — LEAVES OF ABSENCE — PREGNANCY.

An employer policy providing that an employee relinquishes her right to a paid leave of absence for a disability, including a disability caused or contributed to by pregnancy, miscarriage, abortion or childbirth, if such leave is immediately followed by an unpaid leave of absence for infant care has a disparate impact on female employees seeking disability benefits for pregnancy, miscarriage, abortion or childbirth and constitutes sex discrimination under the Civil Rights Act where other employees seeking benefits and leaves of absence for other disabilities are not similarly disqualified from such benefits if their paid leaves of absence are immediately followed by unpaid leaves of absence (MCL 37.2202; MSA 3.548[202]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Felix E. League* and *Dianne Rubin,* Assistant Attorneys General, for Department of Civil Rights.

*Thrun, Maatsch & Nordberg, P.C.* (by *Michael A. Eschelbach* and *Martha J. Marcero*), for Brighton Area Schools.

Amici Curiae:

*Hiller, Hoekenga & Amberg, P.C.* (by *Daniel J. Hoekenga, Deborah G. Holefca* and *Kathlyn M. Thomas*), for Michigan Education Association and Washtenaw-Livingston Education Association.

Before: WAHLS, P.J., and HOOD and N. J. KAUFMAN,* JJ.

PER CURIAM. The Brighton Area Schools (hereaf-

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

ter referred to as the school district) appeals as of right from an order of the Livingston Circuit Court affirming an opinion and order of the Michigan Civil Rights Commission which held that the school district's policy of prohibiting teachers from taking consecutive pregnancy disability and infant care leaves of absence constitutes sex discrimination under the Civil Rights Act, MCL 37.2202(1); MSA 3.548(202)(1). We affirm.

The record reveals that Elaine Peterson, a teacher employed by the school district, was a member of the Brighton Education Association and was covered by the collective bargaining agreement between the Brighton Area Schools Board of Education and the Brighton Education Association. Article XI, paragraph A, § 1 of that agreement, which concerns paid leaves of absence for disabilities, including pregnancy and childbirth, provides:

> At the beginning of each school year each teacher shall be credited with eleven (11) leave days for a teacher to be absent from duty with full pay for personal business, personal illness or illness in the immediate family. Immediate family shall be interpreted as spouse, children or other persons living in the teacher's household. Extenuating circumstances pertaining to other relatives may be approved, with or without pay, by the Superintendent. The teacher may use all or any portion of his/her leave to recover from any disability which shall include all disabilities caused or contributed to by pregnancy, miscarriage, abortion or childbirth. In the event the absence is due to personal business, at least three (3) school days advance written notice (except in cases of emergency) shall be provided to the building principal. Each teacher shall be entitled to accumulate unused leave days up to 111, although no more than 90 consecutive days may be used for one illness.

Any teacher hiring in after the first two (2) weeks of school shall have the number of his/her annual leave days prorated to the percentage of contract days worked.

Article XI, paragraph A, § 10 of the agreement, which concerns unpaid leaves of absence for infant care, provides:

A leave of absence without pay shall be granted in writing to a teacher for the purpose of infant care. Such a leave shall commence at any time prior to the birth of the infant upon written request of the teacher and shall not expire upon written request of the teacher, providing that no infant care leave shall be more than four (4) full semesters. *It is expressly understood that a teacher requesting such a leave relinquishes claim to disability leave privileges as containeed in Paragraph A, Section 1 of this Article. If disability leave privileges have been invoked prior to application for leave for infant care, granting of such a leave will be subject to Board approval.*

A leave of absence without pay shall be granted for one semester or one year, renewable only one time, to any teacher who gives detailed information indicating his/her child's need for special care.

All teachers returning from child or infant care leaves of less than one year and who are returning to work on the first day of the following school year will be guaranteed a position upon return.

It is the responsibility of the teacher returning from leave to inform the Board of Education in writing no later than March 1 of the coming school year of his/her intent to return. [Emphasis added.]

Article XI, paragraph A has remained substantially unchanged since 1973. From the 1973-74 school year until about September, 1980, the school district allowed female teachers to take a

pregnancy disability leave immediately followed by an unpaid infant care leave, even though the board of education had the discretion under its collective bargaining agreement to deny such consecutive leaves of absence. No male teacher in the school district had ever applied for an infant care leave of absence. Moreover, no male teacher had ever applied for consecutive paid disability and unpaid infant care leaves of absence. The superintendent of the school district, Ray R. Keech, was of the opinion that the practice of taking consecutive disability and infant care leaves of absence was detrimental to the interests of the school district, apparently because such leaves of absence resulted in increased financial costs to the school district and in certain problems regarding the placement of teachers returning from infant care leaves to teaching positions.[1]

In the present case, Elaine Peterson gave birth to a daughter on September 25, 1981. She requested a paid disability leave of absence from that date to November 9, 1981, to be followed by an unpaid infant care leave of absence from November 9, 1981, to February 1, 1982. The board of education denied Peterson's request for an infant care leave of absence. In a letter dated October 22, 1981, signed by Superintendent Keech and citing article XI, paragraph A, § 10 of the collective bargaining agreement, Peterson was informed of the board's decision and was instructed "to report to your regular teaching duties as of Monday, November 9, 1981." Subsequently, Peterson re-

[1] The Civil Rights Commission found that the purported overstaffing problems created by teachers returning from infant care leaves of absence could not be attributed to the school district's former policy of allowing consecutive disability and infant care leaves, noting that the number of infant care leaves had not been affected by the change in policy prohibiting consecutive leaves and that "[t]imely notification to the temporary faculty would have adequately resolved the school district's dilemma."

quested and was granted an unpaid infant care leave of absence retroactively applicable from September 25, 1981, and continuing through February 1, 1982. Thus, her entire leave of absence was unpaid.

Peterson filed a sex discrimination complaint against the school district. The Civil Rights Commission, adopting the written opinion of a commissioner, stated:

> It is apparent from the stipulated facts that only women have applied for consecutive disability and infant care leaves during the period in which the contract provisions has [sic] been in effect. It is also clear from the Board that an infant care leave is the only unpaid leave tied to a disability. All other such leaves (educational, sabbatical, general and the like) could be taken immediately following a period of paid disability without forfeiting either the disability pay or the right to an unpaid leave. Finally, it is obvious from the reading of the earlier cited contract language that a male teacher who was disabled during the birth of his child, could take a paid leave for his disability and then take an unpaid child care leave as well. (Article XI, paragraph 2). Accordingly, only women teachers who give birth are affected by [the school district's] policy since it is only they who must choose between a paid disability leave and an unpaid infant care leave.

Moreover, in its order directing the school district to "cease and desist from denying requests for infant care leaves on the basis that the person requesting such leave has taken [a] disability leave on account of pregnancy or childbirth or both," the commission concluded:

> 1. The policy of the Brighton Area Schools to require relinquishment of a right to pregnancy disability payments as a condition of obtaining an

unpaid infant care leave constituted discrimination on account of sex.

2. The policy of Brighton Area Schools to deny unpaid child care leave to a teacher who had first used disability leave during the period of actual disability constituted discrimination on account of sex.

3. The policy of the Brighton Area Schools which required a teacher to elect between paid disability leave for the period of actual disability following the birth of a child, or unpaid infant care leave constituted discrimination on account of sex.

4. The policy of the Brighton Area Schools which required Elaine Peterson to elect between paid disability leave for the period of her disability following the birth of her child, or unpaid infant care leave constituted discrimination on account of sex.

The commission also ordered that Peterson be paid the amount of money she would have received in disability benefits for her period of pregnancy and disability in 1981, apparently $3,536.55, plus interest.[2] The Livingston Circuit Court, after it had "reviewed in detail the record produced at the Civil Rights Commission and [had] drawn its own inferences and conclusions from that record," affirmed the findings of the Civil Rights Commission with only minor modification.

In *Dep't of Civil Rights ex rel Lanphar v A & C Carriers,* 157 Mich App 534, 537-538; 403 NW2d 586 (1987), this Court reiterated the standard of

[2] Peterson was also to receive $379.66, plus interest, representing the value of lost insurance coverage. This award was vacated by the circuit court, however, because Peterson had never introduced evidence of the cost of substitute insurance or of unpaid medical bills. Other remedies used to compensate Peterson included the restoration of an appropriate number of disability leave days; payment, with interest, of $176.83 into Peterson's retirement fund; and payment, with interest, of $1,050.03, due to a "delay in increment" for the 1982-83 and 1983-84 school years.

review applicable in cases such as that now before us:

> An appeal to the circuit court from a final order of the Civil Rights Commission is a trial de novo. *Dixon v Ford Motor Co,* 402 Mich 315, 317; 262 NW2d 666 (1978), reh den 402 Mich 965 (1978); Const 1963, art 5, § 29. This Court must make an independent review of the whole record but will not substitute its judgment for that of the circuit court unless it is left with a definite and firm conviction that a mistake has been made. *Dixon, supra,* p 319; MCR 2.613(C).

In the Civil Rights Act, MCL 37.2202(1); MSA 3.548(202)(1), it is provided:

> An employer shall not:
> (a) Fail or refuse to hire, or recruit, or discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.
> (b) Limit, segregate, or classify an employee or applicant for employment in a way which deprives or tends to deprive the employee or applicant of an employment opportunity, or otherwise adversely affects the status of an employee or applicant because of religion, race, color, national origin, age, sex, height, weight, or marital status.
> (c) Segregate, classify, or otherwise discriminate against a person on the basis of sex with respect to a term, condition, or privilege of employment, including a benefit plan or system.

"Sex," as that term is used in the act, includes pregnancy and childbirth. MCL 37.2201(d); MSA 3.548(201)(d). Thus, " 'pregnancy' discrimination is included within the meaning of 'sex' contained in the [Civil Rights Act]." *Dep't of Civil Rights ex rel*

*Jones v Dep't of Civil Service,* 101 Mich App 295, 304; 301 NW2d 12 (1980), lv den 411 Mich 1034 (1981). This Court has recognized that, because pregnancy is a condition unique to women, any distinction drawn on the basis of pregnancy denies women valuable rights solely on account of their sex. *Id.*[3]

The dispute in this case concerns, in essence, whether the enforcement by the school district of article XI, paragraph A, § 10 of the collective bargaining agreement between the Brighton Areas Schools Board of Education and the Brighton Education Association, which forced Peterson to choose between taking a paid pregnancy-childbirth disability leave of absence and an unpaid infant care leave of absence, constitutes unlawful sex discrimination. We agree with the Civil Rights Commission and the Livingston Circuit Court that it does.

Section 202 of the Civil Rights Act, MCL 37.2202; MSA 3.548(202), is modeled after § 703 of Title VII of the Civil Rights Act of 1964, 42 USC 2000e-2. Federal courts have recognized two theories of recovery under Title VII, namely, the theories of "disparate treatment" and of "disparate impact." *International Brotherhood of Teamsters v United States,* 431 US 324, 335-336, n 15; 97 S Ct 1843; 52 L Ed 2d 396 (1977). This Court has also recognized these twin theories of recovery in discrimination cases. *Farmington Ed Ass'n v Farmington School Dist,* 133 Mich App 566, 571-574; 351 NW2d 242 (1984). Recently, in *Smith v Consolidated Rail Corp,* 168 Mich App 773; 425 NW2d 220

---

[3] See also *Nickels v Brown City Community Schools,* 105 Mich App 708; 307 NW2d 707 (1981); *Northville Public Schools v Civil Rights Comm,* 118 Mich App 573; 325 NW2d 497 (1982); *Bully v General Motors Corp,* 120 Mich App 165; 328 NW2d 24 (1982), lv den 417 Mich 1026 (1983); and *Farmington Ed Ass'n v Farmington School Dist,* 133 Mich App 566; 351 NW2d 242 (1984).

(1988), a panel of this Court explained the differences between these theories in the context of a suit for racial discrimination:

> To establish a claim of disparate treatment, plaintiffs must establish by a preponderance of the evidence that a prima facie case of discrimination exists. *Clark v Uniroyal Corp,* 119 Mich App 820, 824; 327 NW2d 372 (1982). Plaintiffs must show that they were a member of a class entitled to protection under the act and that, for the same or similar conduct, they were treated differently than one who was a member of a different race. *Schipani v Ford Motor Co,* 102 Mich App 606, 617; 302 NW2d 307 (1981).
>
> If the plaintiffs succeed in presenting a prima facie case, the burden shifts to the defendants to articulate some legitimate, nondiscriminatory reason for its actions. If defendants articulate such a reason, the plaintiffs must prove by a preponderance of the evidence that defendants' reasons were a mere pretext for discrimination. *Clark, supra,* p 824. If plaintiffs are unable to sustain the shifting burden of proof, summary disposition in favor of defendants is appropriate. *Id.,* p 827. [*Smith, supra,* p 778.]

In *Smith,* the Court also held:

> Under the disparate impact theory, proof of a discriminatory motive is not required. Disparate impact involves employment practices that are facially neutral in their treatment of different groups but that, in fact, fall more harshly on one group than on another and cannot be justified by business necessity. *Farmington Education Ass'n, supra,* p 571. This Court has noted that "a completely neutral practice will always have a disparate impact on some group, and discrimination need not always be inferred from such consequences." [*Smith, supra,* p 776.]

The Civil Rights Commission found that Peterson was entitled to recover under both the disparate treatment and disparate impact theories. Regarding the disparate treatment theory, the commission stated:

> Claimant and all similarly situated teachers in the Brighton Area schools are part of that same sub-group of protected persons. As teachers who have become pregnant and have given birth to children, they are the only employees precluded from receiving disability benefits because of exclusionary language relating to pregnancy and childbirth, contained in the agreement and enforced by respondent. Consequently, they may recover under a theory of disparate treatment.

The commission, however, did not find that the school district's motive in enforcing the challenged collective bargaining provision was discriminatory or that a discriminatory motive could properly be inferred. In cases of disparate treatment, proof of discriminatory motive is required in order to establish a prima facie case. *Farmington Ed Ass'n, supra,* pp 571-572, quoting *International Brotherhood of Teamsters, supra,* and citing *McDonnell Douglas Corp v Green,* 411 US 792, 802-806; 98 S Ct 1817; 36 L Ed 2d 668 (1973). We note that the language of article XI, paragraph A, § 10 of the collective bargaining agreement was negotiated by the Brighton Education Association and the school district. From the 1973-74 school year until about September, 1980, the school district allowed female teachers to take consecutive paid pregnancy disability and unpaid infant care leaves of absence. The school district then changed its policy to enforce article XI, paragraph A, § 10 and, in this case, made Peterson choose between a paid pregnancy disability leave and an unpaid infant care

leave of absence. Superintendent Keech apparently recommended a change in policy due to the former policy's claimed financial cost to the school district and problems in placing teachers returning from infant care leave into teaching positions. However, the financial benefits and liabilities of the policy change to the school district are unclear. While these motives may be weak, or even untrue, they were not shown to be discriminatory or a mere pretext. Accordingly, Peterson cannot recover under a disparate treatment theory. To the extent that the commission based its decision on the theory of disparate treatment, and the circuit court affirmed that decision on the basis of that theory, we find error.

Reversal of the commission's holding, however, is not required because Peterson is entitled to recover under the theory of disparate impact. Under that theory, proof of discriminatory motive is not required. The school district's changed policy of enforcing the facially neutral language of limitation in the collective bargaining agreement affected female teachers much more harshly than it did male teachers. In fact, no male teacher had ever applied for an infant care leave of absence or had ever applied for consecutive paid disability and unpaid infant care leaves of absence. As well observed by the Civil Rights Commission, "only women teachers who give birth are affected by [the school district's] policy since it is only they who must choose between a paid disability leave and an unpaid infant care leave." It is obvious that, under the school district's changed policy, women teachers alone are forced to choose between taking a paid leave of absence for disability due to pregnancy or childbirth and an unpaid leave of absence for infant care. This choice is presented to women teachers because they, unlike men, become

disabled due to pregnancy or childbirth, such disability arising just prior to the time when they wish to take leaves of absence for infant care. As noted by the circuit court in this case, the "sole prohibited situation" where a teacher wishes to take consecutive disability and infant care leaves of absence "is related to disability based upon pregnancy."

Since pregnancy is a condition unique to women, since only women have requested consecutive pregnancy disability and infant care leaves of absence, and since, under petitioner's changed policy, it has begun enforcing contractual language which provides that a teacher who requests an infant care leave of absence "relinquishes claim to disability leave privileges" for disabilities "caused or contributed to by pregnancy, miscarriage, abortion, or childbirth," it is clear to us, as it was to the Civil Rights Commission, that the effect of the school district's policy is that "a female teacher who is pregnant can only receive either a short paid leave for her pregnancy disability period or a longer unpaid leave for purposes of caring for her child." Where such a choice of benefits is, as in the present case, visited more harshly upon one sex than the other, that choice constitutes sex discrimination pursuant to this state's civil rights act under the disparate impact theory of recovery.

Accordingly, we affirm on the basis that the school district's action constituted sex discrimination under the disparate impact theory of recovery, although that action was not shown to have constituted sex discrimination under the disparate treatment theory of recovery.[4]

Affirmed.

---

[4] We note that the wealth of cases from foreign jurisdictions cited by the parties and by amici curiae in their briefs, more than anything else, discloses that the issues in the case at bar and similar issues present close questions about which there is a great deal of disagree-

ment. See, e.g., *Farley v Ocean Twp Bd of Ed*, 174 NJ Super 449; 416 A2d 969 (1980), cert den 85 NJ 140; 425 A2d 294 (1980); *School Committee of Braintree v Massachusetts Comm Against Discrimination*, 377 Mass 443; 386 NE2d 1251 (1979); *State Div of Human Rights v Bd of Ed, Draper School Dist, Town of Rotterdam*, 51 AD2d 357; 381 NYS2d 544 (1976), aff'd 40 NY2d 1021; 359 NE2d 1327; 391 NYS2d 532 (1976); *Rotterdam-Mohanasen Central School Dist v State Div of Human Rights*, 70 AD2d 727; 416 NYS2d 860 (1979), aff'd 49 NY2d 744; 402 NE2d 1171; 426 NYS2d 270 (1980); *Jericho Union Free School Dist v New York State Human Rights Appeal Bd*, 97 AD2d 762; 468 NYS2d 393 (1983); *West Hempstead Union Free School Dist v State Div of Human Rights*, 116 AD2d 642; 497 NYS2d 721 (1986).