DONAJKOWSKI v ALPENA POWER COMPANY

Docket Nos. 183174, 183475. Submitted July 11, 1996, at Lansing. Decided October 11, 1996, at 9:50 A.M. Leave to appeal sought.

Christina Donajkowski, Beth McDonald, and Deedra Duranceau brought an action in the Alpena Circuit Court against their employer, Alpena Power Company, alleging sexual discrimination under the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, and a violation of the Equal Pay Act, 29 USC 206(d)(1), relating to a wage freeze pursuant to the terms of a collective bargaining agreement between the defendant and Local 286, Utility Workers of America affecting only those in their job classification, all of whom were women. The court, Joseph P. Swallow, J., allowed the defendant to bring a third-party action against the union for contribution in the event that the defendant was found liable to the plaintiffs. The court summarily dismissed the plaintiffs' action and the defendant's third-party action, ruling that the plaintiffs' discrimination claim under state law is preempted by the Labor Management Relations Act (LMRA), 29 USC 185(a). The plaintiffs appealed and the union appealed the trial court's allowance of the defendant's third-party action against the union for contribution. The appeals were consolidated.

The Court of Appeals *held*:

1. The trial court erred in determining that the plaintiffs' discrimination claim under state law is preempted by the LMRA. State law issues are preempted by the LMRA only when the application of the state law requires the interpretation of the collective bargaining agreement. The resolution of the plaintiffs' discrimination claim does not require interpretation of the collective bargaining agreement inasmuch as the Civil Rights Act confers nonnegotiable rights that are independent of any right established by contract and the issues raised by the plaintiffs concern primarily factual questions involving the employer's conduct and motivation.

2. The trial court erred in determining that the plaintiffs were required to allege some type of unfair labor practice as a condition precedent to their discrimination claim. The right to be free from sexual discrimination is a right independent of the collective bargaining process, and the plaintiffs are under no obligation to allege

a defect in that process in order to maintain their discrimination claim.

3. The trial court erred in granting summary disposition of the plaintiffs' discrimination claim. The plaintiffs established a prima facie case of discrimination under the disparate treatment theory and the disparate impact theory. With respect to the disparate treatment theory, the plaintiffs established that they are members of a class deserving of protection under the Civil Rights Act (i.e., women), that for the same or similar conduct they were treated differently from men, and that the defendant had a discriminatory motive. With respect to the disparate impact theory, the plaintiffs showed that an issue of material fact existed regarding whether the defendant's policy of limiting the pay of those in the plaintiffs' job classification affected women more harshly than men.

4. The trial court properly allowed the defendant to bring a third-party action against the union for contribution. Michigan law provides for a general right to contribution in tort actions, MCL 600.2925a; MSA 27A.2925(1), and discrimination based on sex is a tort. To the extent that the union argues that the defendant is an intentional tortfeasor, the union is a joint intentional tortfeasor because liability, if any, by the defendant to the plaintiffs would be a result of the bargained-for contract to which the union was a party. Contribution among joint intentional tortfeasors is allowed under the contribution statute.

Affirmed in part, reversed in part, and remanded for further proceedings.

C. A. NELSON, J., dissenting, stated that the trial court properly granted summary disposition of the plaintiffs' discrimination claim, albeit for the wrong reason. Although the plaintiffs established that they are members of a class protected by the Civil Rights Act, they nevertheless failed to demonstrate that they were discriminated against when compared to men. The evidence indicated that Donajkowski and McDonald were being paid substantially more than the maximum pay rate, that plaintiffs were not barred from moving from their job classification to higher classifications, that the defendant awarded pay increases to female employees other than the plaintiffs, and that the defendant's failure to raise the plaintiffs' wages was due to economic considerations, not discrimination.

1. LABOR RELATIONS — LABOR MANAGEMENT RELATIONS ACT — PREEMPTION OF STATE LAW CLAIMS.

A state law claim alleging discrimination by an employer against an employee covered by a collective bargaining agreement is not preempted by the Labor Management Relations Act if the state law at

issue confers a nonnegotiable right independent of any right established by the collective bargaining agreement and the application of the state law does not require the interpretation of the collective bargaining agreement (29 USC 185[a]).

2. LABOR RELATIONS — CIVIL RIGHTS — UNFAIR LABOR PRACTICES.

An employee has a right under the Civil Rights Act not to be discriminated against by an employer on the basis of sex; because the right exists independent of any rights under an applicable collective bargaining agreement, the employee need not allege an unfair labor practice in bringing an action under the Civil Rights Act for discrimination by the employer (MCL 37.2101 *et seq.*; MSA 3.548[101] *et seq.*).

3. CONTRIBUTION — CIVIL RIGHTS — SEXUAL DISCRIMINATION.

The general right provided by Michigan law to contribution in tort actions extends to a defendant in an action for discrimination based on sex (MCL 600.2925a; MSA 27A.2925[1]).

4. CONTRIBUTION — JOINT INTENTIONAL TORTFEASORS.

Contribution among joint intentional tortfeasors is allowed under the contribution statute (MCL 600.2925a; MSA 27A.2925[1]).

*Boyce, White & Werth* (by *Richard G. Boyce*), for Christina Donajkowski, Beth McDonald, and Deedra Duranceau.

*The Fishman Group* (by *Steven J. Fishman* and *Niels Eric Hansen*), for Alpena Power Company.

*Sachs, Waldman, O'Hare, Helveston, Hodges & Barnes, P.C.* (by *Mary Ellen Gurewitz*), for Local 286, Utility Workers of America.

Before: NEFF, P.J., and FITZGERALD and C. A. NELSON,* JJ.

NEFF, P.J. In Docket No. 183174, plaintiffs appeal as of right from the trial court's order awarding summary disposition to defendant and dismissing with

---

* Circuit judge, sitting on the Court of Appeals by assignment.

prejudice plaintiffs' gender discrimination action brought pursuant to the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, and the Equal Pay Act, 29 USC 206(d)(1). In Docket No. 183475, Local 286, Utility Workers of America, AFL-CIO, appeals as of right from the same order, which also dismissed with prejudice defendant's third-party complaint seeking contribution from the union in the event that defendant was found liable to plaintiffs.[1] We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

I

Plaintiff Christina Donajkowski began working for defendant on or about June 27, 1985, as a receptionist. In 1986, she became a meter reader and the first female member of the union. Plaintiff Beth McDonald commenced employment with defendant in an office position in June 1989 and transferred to meter reading on or about July 31, 1989. In the fall of 1989, Donajkowski, McDonald, and Tom Clearwood were full-time meter readers, and Ray Robb was employed in general labor. Donajkowski and Clearwood made $12.40 an hour, Robb made $11.93, and McDonald made $11.80.

During the fall of 1989, defendant and the union negotiated a three-year collective bargaining agreement that created a new job classification known as "general labor/meter reader," comprised of certain

---

[1] In its opinion, the trial court determined that the contribution action was moot because the underlying claim was dismissed. On appeal, the union challenges the trial court's determination that a contribution action properly lies if defendant employer is liable to plaintiffs on the basis of discrimination arising from the labor contract.

lower-skill jobs and having a wage range of $7.50 to $10.50 an hour. Donajkowski and McDonald, being members of the new classification, had their wages "frozen" at their existing pay rates even though they exceeded the maximum rate provided by the classification. The record indicates that both of these plaintiffs voted to ratify the agreement. Defendant stated that the new job classification was created to furnish more flexibility in its labor force and to help contain costs by establishing a market-sensitive "hire-in" wage rate.

Plaintiff Deedra Duranceau hired in with defendant as a general laborer in the general labor/meter reader classification in March 1990 at $7.50 an hour and thereafter received step increases bringing her to the $10.50 an hour maximum rate for that classification.

Consistent with the "wage freeze" policy for the new classification, defendant granted no pay increases for the general labor/meter reader employees, although the 1989 bargaining agreement provided for yearly 2½ percent pay increases for other workers. When defendant and the union could not agree on a new contract in the fall of 1992, defendant implemented the terms of its last offer and union members continued to work on that basis without a contract. These terms apparently included a yearly three percent pay increase for all bargaining unit employees except plaintiffs. Thus, the situation existing at the time of the September 8, 1994, hearing on defendant's motion for summary disposition was that the general labor/meter reader classification was comprised solely of plaintiffs, whose wages remained frozen in contrast to other union members. Female employees

who were not union members also received wage increases during this period.

After the union was dismissed as a party-plaintiff pursuant to stipulation, defendant filed a third-party complaint seeking contribution from the union in the event defendant was found liable to plaintiffs. Plaintiffs and the union now challenge the trial court's award of summary disposition to defendant.

II

We first examine plaintiffs' appellate claims. We conclude that reversal is required.

A

This Court reviews de novo the trial court's order under MCR 2.116(C)(10). *Michigan Mutual Ins Co v Dowell*, 204 Mich App 81, 85-86; 514 NW2d 185 (1994). When conducting this review, we examine the entire record in a light most favorable to the nonmoving party to determine whether a record could be developed that would leave open an issue on which reasonable minds could differ. *Id.* Summary disposition is proper where no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. *Id.* However, a court may not weigh the evidence before it, or make findings of fact; if the evidence before it is conflicting, summary disposition is improper. *Barnell v Taubman Co, Inc*, 203 Mich App 110, 115; 512 NW2d 13 (1993).

B

We first address that aspect of the trial court's ruling that dealt with plaintiffs' claim based on the collective bargaining agreement. We find this ruling to have been in error.

The trial court determined that plaintiffs' discrimination claims challenged the validity of the bargained-for contract and that they could not be brought in state court because the issues raised were preempted by federal law.

In *Betty v Brooks & Perkins*, 446 Mich 270; 521 NW2d 518 (1994), our Supreme Court examined whether the plaintiff's state law discrimination claim was preempted by the Labor Management Relations Act (LMRA), 29 USC 185(a). The Court, construing United States Supreme Court precedent, determined that state law issues are preempted by the LMRA only when the application of the state law requires the interpretation of the collective bargaining agreement. *Id.* at 276-280. An important factor in determining whether contractual interpretation is involved is whether the state law at issue confers nonnegotiable rights on employers or employees independent of any right established by the contract. *Id.* Also, when the state court action involves primarily factual determinations, such as the conduct and motivation of the employer, the issues raised do not involve interpretation of the contract. *Id.* at 280. The Court specifically noted the unique nature of state discrimination claims, which generally require a primarily factual inquiry. *Id.* at 281-282.

Here, we conclude that plaintiffs' state law discrimination claims are not preempted by the LMRA. First, the issues raised by plaintiffs involve rights that may not be waived by contract, i.e., the right to be free from sexual discrimination. *Id.* at 284. Further, the issues raised by plaintiffs do not require interpretation of the contract, but raise primarily factual ques-

tions. Plaintiffs claim that defendant intentionally discriminated against them, as evidenced by defendant's conduct and statements, and claim that even if its conduct does not demonstrate discrimination, women were treated more harshly than men as a result of defendant's implementation of the new, otherwise facially valid, classification. Because neither claim requires interpretation of the contract, but an investigation into defendant's conduct and motives, we conclude that the trial court erred in determining that plaintiffs' claims were barred by the LMRA.

2

The trial court also held that plaintiffs were required to allege some type of unfair labor practice as a condition precedent to a state law sexual discrimination claim. We find this ruling to have been in error.

As noted above, the right to be free from sexual discrimination is a right independent of the collective bargaining process. *Id.* at 284. Accordingly, plaintiffs were under no obligation to allege a defect in that process, and the trial court erred to the extent it relied on the absence of such an allegation in granting summary disposition to defendant.

C

Next, we address the merits of plaintiffs' claims. A discrimination claim can be based on two theories: (1) disparate treatment and (2) disparate impact. *Lytle v Malady*, 209 Mich App 179, 184; 530 NW2d 135 (1995). In order to prove disparate treatment, plaintiffs must prove either a pattern of intentional discrimination against a protected class or against them-

selves individually. *Id.* at 184-185. Disparate impact requires a showing that an otherwise facially neutral policy has a discriminatory effect. *Id.*

1

From our reading of the pleadings, we conclude that plaintiffs pursued both theories below. First, we conclude that the trial court erred in granting summary disposition with regard to plaintiffs' disparate treatment theory. To avoid summary disposition under that theory, plaintiffs were required to establish a genuine issue of material fact regarding whether a prima facie case of discrimination existed, i.e., that they are members of a class deserving of protection under the statute and that, for the same or similar conduct, they were treated differently from men. *Schultes v Naylor*, 195 Mich App 640, 645; 491 NW2d 240 (1992). Further, plaintiffs must present evidence that defendant had a discriminatory motive. See *Dep't of Civil Rights ex rel Peterson v Brighton Area Schools*, 171 Mich App 428, 439; 431 NW2d 65 (1988).

As females, plaintiffs have satisfied the requirement that they be members of a statutorily protected class. The question becomes then, whether, when viewed in a light most favorable to plaintiffs, they could show at trial that they were treated differently from men performing the same or similar work.

The facts in favor of granting summary disposition are that Donajkowski and McDonald are being paid substantially more than the maximum pay rate provided by the labor contract, that plaintiffs are not barred from moving out of their classification into higher-level jobs, and that defendant awarded pay increases to female employees other than plaintiffs.

Evidence also existed, however, that before the existing contract classification was created, one of defendant's officials stated that he wanted housewives to read meters. Indeed, at the time of this case, only women were full-time meter readers. Further, in the course of contract talks in 1992, the president of the union allegedly offered a two percent pay increase for all employees instead of a four percent increase for all employees except for the meter readers. This proposal was rejected by defendant. Also, after the 1989 contract in which the meter readers' wages were frozen, a company official told the union president that the three women (the meter readers) were treated badly as a result of the contract. We find this latter piece of evidence particularly important. In contrast to this Court's statement in *Lytle, supra* at 185, here, defendant was "so blatant as to announce its illegal motives."

Viewed in a light most favorable to plaintiffs, we conclude that this evidence is sufficient to allow a jury to conclude that plaintiffs, because of their status as women, were treated differently from their male counterparts. The evidence indicated that the intent was that the meter reader job be assigned to women and that that job classification was the only one to be singled out for a wage freeze.

2

To avoid summary disposition under the disparate impact theory, plaintiffs were required to create an issue of fact with regard to whether defendant's policy of limiting the pay for meter readers affected women more harshly than it did men. See *Brighton Area Schools, supra* at 440. Under this theory, plain-

tiffs need not prove that defendant intended to discriminate. *Id.*

We conclude that sufficient evidence existed to allow plaintiffs to create an issue of material fact under a disparate impact theory. Although the classification itself does not seem to be discriminatory, we conclude that under defendant's implementation of that classification, women were treated more harshly than men. The evidence demonstrated that around the time the pay freeze was put into effect, all the men transferred out of the meter reader classification so that only women were left in that position. While some evidence exists suggesting that the enforcement of the wage freeze may have been nondiscriminatory, we find it important that in the three-year period relevant to this appeal, the meter reader classification consisted only of women, but before the implementation of the freeze, mainly men occupied the position of meter reader. Because conflicting evidence existed, summary disposition was improperly granted. Accordingly, we conclude that reversal is also required to the extent the trial court dismissed plaintiffs' claims on a disparate impact theory.

III

We next address the union's claim on appeal that the trial court improperly allowed defendant to implead the union to obtain contribution in plaintiffs' cause of action. We conclude that the trial court properly allowed defendant's contribution action.

A

The union first argues that federal law should govern this case and that, under federal law, contribution

actions in civil rights claims such as this are not permitted. While we recognize the validity of the federal precedent on which the union relies, we conclude that it does not apply with equal force in Michigan.

In *Northwest Airlines, Inc v Transport Workers Union of America,* 451 US 77; 101 S Ct 1571; 67 L Ed 2d 750 (1981), the Supreme Court determined that contribution claims could not be had in federal discrimination causes of action. The Court in *Northwest Airlines* based its decision on two grounds. First, the Court determined that no right to contribution existed in title VII or the Equal Pay Act. *Id.* at 91-95. In this context, the Court stated that employers are not members of a class to be protected under either of these two statutes. *Id.* at 92.

As a separate issue, the Court also addressed whether a general right to contribution existed at federal common law, suggesting that, even though such a right did not exist under the statutes, if a common-law right existed, contribution could be had. The Court held that a case based on maritime law "did not recognize a general federal right to contribution, and no such federal right has been recognized in any other decisions of this Court." *Id.* at 96-97. The Court simply held that, where no authority existed for a contribution right, "it would be improper for [the Supreme Court] to add a right to contribution to the statutory rights that Congress created in the Equal Pay Act and Title VII." *Id.* at 98.

In contrast to this federal holding, Michigan law does provide for a general right to contribution in tort actions. MCL 600.2925a; MSA 27A.2925(1). In Michigan, discrimination based on sex is a tort. *McCalla v Ellis,* 129 Mich App 452, 462; 341 NW2d 525 (1983).

Accordingly, defendant properly impleaded the union for contribution under MCL 600.2925a; MSA 27A.2925(1).

B

The union, however, argues that even if the contribution statute applies generally to discrimination cases, it cannot apply here because plaintiffs alleged intentional discrimination on defendant's part and the contribution statute does not apply to intentional torts. We disagree.

1

We begin our analysis by noting that to the extent that the union argues defendant is an intentional tortfeasor, it too must be an intentional tortfeasor because any liability on defendant's part is as a result of the bargained-for contract to which the union was also a party. The record bears out this conclusion. In his deposition, the president of the union admitted that he knew at the time the contract was entered into that it was disadvantageous to plaintiffs.

2

In *Hunt v Chrysler Corp*, 68 Mich App 744; 244 NW2d 16 (1976), this Court determined that the predecessor to MCL 600.2925a; MSA 27A.2925(1) included joint intentional tortfeasors. Although the issue in that case was whether the plaintiff's release of other joint tortfeasors affected his ability to sue the defendant, the Court construed *Moyses v Spartan Asphalt Paving Co*, 383 Mich 314; 174 NW2d 797 (1970), a seminal case dealing with the doctrine of contribution

among tortfeasors.[2] Ultimately, the Court in *Hunt*, *supra* at 749, determined that the purpose of the contribution statute allowed a suit to proceed against joint intentional tortfeasors. The Court determined that to "restrict the statutory definition of joint tortfeasors is to aid those who least deserve the protection . . . intentional tortfeasors." *Id.* See also *Fidelity & Deposit Co of Maryland v Newman*, 109 Mich App 620, 626; 311 NW2d 821 (1981) ("In *Hunt*, the Court examined MCL 600.2925(1); MSA 27A.2925(1), the predecessor to MCL 600.2925a; MSA 27A.2925(1), and found it applicable to joint intentional tortfeasors.")

Accordingly, because the union and defendant, if liable, are joint intentional tortfeasors, we conclude that the trial court properly allowed defendant to implead the union.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

FITZGERALD, J., concurred.

C. A. NELSON, J. (*dissenting*). I respectfully dissent. As females, plaintiffs have satisfied the requirement that they be members of a statutorily protected class. However, I find that they have failed to demonstrate that they were treated discriminatorily vis-a-vis defendant's male employees. Although it is true that all the plaintiffs in this case are females and at the time in question were the sole members of the gen-

---

[2] Although the Court's opinion in *Moyses* has been superseded by statute, our Supreme Court continues to rely on the "equitable rules" of contribution found in the *Moyses* opinion. See *O'Dowd v General Motors Corp*, 419 Mich 597, 607; 358 NW2d 553 (1984).

eral labor/meter reader classification, the evidence shows that Donajkowski and McDonald are being paid substantially more than the maximum pay rate provided by it, that plaintiffs are not barred from moving from their classification to higher-level jobs, that defendant awarded pay increases to female employees other than plaintiffs, and that its failure to raise their wages is due to the economics of the marketplace, not gender discrimination. In my view, plaintiffs have failed to establish a genuine issue of material fact regarding the existence of a prima facie case of discrimination, and summary disposition pursuant to MCR 2.116(C)(10) was therefore proper. Where, as here, the trial court reaches the correct result for the wrong reasons, the result will not be disturbed on appeal. *Wilson v Acacia Park Cemetery Ass'n*, 162 Mich App 638, 642; 413 NW2d 79 (1987). I would affirm.