SMITH v GOODWILL INDUSTRIES OF WEST MICHIGAN, INC

Docket No. 218795. Submitted November 8, 2000, at Grand Rapids. Decided December 1, 2000, at 9:15 A.M.

Tamera Smith brought an action in the Muskegon Circuit Court against Goodwill Industries of West Michigan, Inc., alleging discrimination in violation of the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, and violation of the federal Family and Medical Leave Act (FMLA), 29 USC 2601 *et seq.* The action was based on the plaintiff's dismissal from employment when she returned to work following a maternity leave taken pursuant to the FMLA. The defendant alleged that the plaintiff's position had been eliminated under a corporate restructuring plan. The court, James M. Graves, Jr., J., granted summary disposition in favor of the defendant. The plaintiff appealed.

The Court of Appeals *held*:

1. The court properly applied the burden-shifting analysis first established in *McDonnell Douglas Corp v Green*, 411 US 792 (1973), in granting summary disposition of the claim alleging violation of the FMLA. The plaintiff established a prima facie case of a violation of the FMLA, the defendant then met its burden of demonstrating that there was a nondiscriminatory reason for its actions, and the plaintiff then failed to meet her burden of establishing a genuine issue of material fact regarding whether the defendant's stated reason for eliminating the plaintiff's position was unworthy of belief. The defendant raised the issue whether the plaintiff would have been entitled to her position had she not taken the leave and, consequently, the question of intent was relevant, and the *McDonnell Douglas* analysis was appropriately applied.

2. The court erred in requiring the plaintiff to establish a prima facie case of gender discrimination by showing that she was replaced by a person who was not a member of her protected class. The court erred in granting summary disposition of this claim without considering the plaintiff's argument that the defendant acted discriminatorily by treating her different from a similarly situated male employee. However, reversal is not required because the plaintiff failed to establish that she was treated different from a similarly situated male employee.

3. The plaintiff failed to meet her burden with regard to her pregnancy discrimination claim that was based on disparate treatment. The plaintiff failed to show that the defendant had a discriminatory intent and therefore failed to establish a prima facie case.

Affirmed.

1. MOTIONS AND ORDERS — SUMMARY DISPOSITION — FAMILY AND MEDICAL LEAVE ACT.

The burden-shifting analysis applicable in some employment discrimination actions that was established in *McDonnell Douglas Corp v Green*, 411 US 792 (1973), applies in cases involving alleged violations of the Family and Medical Leave Act; in the summary disposition context, the plaintiff employee must raise a genuine issue of material fact with regard to each element of the prima facie case; once that has been accomplished the burden shifts to the defendant employer to offer a legitimate nondiscriminatory reason for its employment decision; if the defendant produces such a legitimate nondiscriminatory reason, the burden reverts to the plaintiff to show that there is a genuine dispute of material fact regarding whether the defendant's proffered reason for the challenged action is pretextual or unworthy of belief (29 USC 2601 *et seq.*).

2. MOTIONS AND ORDERS — SUMMARY DISPOSITION — FAMILY AND MEDICAL LEAVE ACT.

The question of intent may become relevant once one of the parties to an action alleging a violation of the Family and Medical Leave Act raises the issue whether a right, benefit, or position is one to which the plaintiff employee would have been entitled had the plaintiff not taken the leave or whether the defendant employer has taken adverse action against the plaintiff for having exercised a right under the act; in a summary disposition context, once the question of intent is relevant, application of the burden-shifting analysis established in *McDonnell Douglas Corp v Green*, 411 US 792 (1973), is appropriate (29 USC 2601 *et seq.*).

3. CIVIL RIGHTS — EMPLOYMENT DISCRIMINATION — GENDER DISCRIMINATION.

A female employee who brings an action under the Civil Rights Act alleging that her employer acted discriminatorily by treating her different from a similarly situated male employee must establish a prima facie case by showing that she was a member of a protected class, that she was subject to an adverse employment action, that she was qualified for the position, and that others, similarly situated and outside the protected class, were unaffected by the employer's adverse conduct (MCL 37.2101 *et seq.*; MSA 3.548[101] *et seq.*).

4. Civil Rights — Employment Discrimination — Pregnancy.

   A plaintiff in an action under the Civil Rights Act alleging employment
      discrimination attributable to the plaintiff's pregnancy and basing
      the claim on a "disparate treatment" theory must establish a prima
      facie case by showing the defendant had a discriminatory motive
      (MCL 37.2101 *et seq.*; MSA 3.548[101] *et seq.*).

*Bott & Spencer, P.C.* (by *Timothy J. Bott*), for the plaintiff.

*Warner Norcross & Judd LLP* (by *Paul T. Sorensen* and *Daniel P. Ettinger*), for the defendant.

Before: Neff, P.J., and Murphy and Griffin, JJ.

Per Curiam. Plaintiff appeals as of right from the circuit court's grant of summary disposition in favor of defendant. We affirm.

Plaintiff was hired by defendant in December 1993 as director of placement services. In that position, plaintiff was responsible for managing defendant's "community placement program," which locates employment for disabled persons. On December 8, 1995, plaintiff took a maternity leave pursuant to the Family and Medical Leave Act (fmla), 29 USC 2601 *et seq.* When plaintiff returned to work as scheduled on March 11, 1996, her supervisor, Dan Christensen, informed her that her position had been eliminated under a corporate restructuring plan, and that, consequently, she was dismissed from employment.

According to Richard Carlson, defendant's president, defendant began considering a reorganization of its management staff in 1994 because of changes mandated by welfare reform, school-to-work legislation, and the federal Job Training Partnership Act, PL 97-300, 96 Stat 1322, especially under directives of the Michigan Jobs Commission. The restructuring plan

would streamline defendant's management structure to reflect an integrated service delivery system, rather than the previous categorical program model. The plan eliminated the positions of director of placement, assessment counselor, director of assessment, and work activities program director, which were geared to specific programs, and created a new community services manager position to oversee all community services operations. The community services manager assumed, in part, the directors' responsibilities.[1]

Diana Briggs, defendant's assessment counselor, was notified in late September 1995 that she would be dismissed as a result of corporate restructuring. According to Christensen's affidavit, the management restructuring plan was incorporated into defendant's October 1995 proposed budget and was approved by defendant's board of directors in February 1996. Lynne Spencer subsequently was hired as the community services manager. Richard Tejchma, the director of assessment, whose position was eliminated, was assigned a position as director of vocational evaluations.

In October 1997, plaintiff filed the instant action against defendant. In count I of her complaint, plaintiff alleged that defendant discriminated against her on the basis of her gender and her pregnancy in violation of the Civil Rights Act[2] (CRA). In count II, plaintiff alleged that defendant violated the FMLA by dismissing her because of her decision to take maternity leave. The trial court granted summary disposition in favor

---

[1] A facilities services manager position was created to manage on-site services.

[2] MCL 37.2101 et seq.; MSA 3.548(101) et seq.

of defendant on both counts pursuant to MCR 2.116(C)(10).

I

Plaintiff first argues that the trial court improperly granted summary disposition of her FMLA claim. We disagree. We review the trial court's grant of summary disposition de novo. *Pinckney Community Schools v Continental Casualty Co*, 213 Mich App 521, 525; 540 NW2d 748 (1995).

Subsection 2614(a)(1) of the FMLA, 29 USC 2614(a)(1), provides:

> (a) Restoration to position
>
> (1) In general
>
> Except as provided in subsection (b) of this section, any eligible employee who takes leave under section 2612 of this title for the intended purpose of the leave shall be entitled, on return from such leave—
>
> (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or
>
> (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

Plaintiff argues that summary disposition was improper because defendant conceded that plaintiff had established a prima facie case of a violation of FMLA § 2614. Thus, plaintiff contends that a jury should have decided whether defendant's stated reasons for terminating plaintiff's employment were legitimate and unrelated to plaintiff's decision to take maternity leave pursuant to the FMLA.

We found no Michigan case addressing the issue raised by plaintiff under the FMLA. However, review by this Court of the federal law regarding this federal statute is proper. See *Markis v Grosse Pointe Park*, 180 Mich App 545, 553; 448 NW2d 352 (1989). In *Morgan v Hilti, Inc*, 108 F3d 1319 (CA 10, 1997), the Tenth Circuit Court of Appeals explained the proper analytical framework for addressing alleged violations of the FMLA. The court noted that the "burden-shifting analysis" first established in *McDonnell Douglas Corp v Green*, 411 US 792, 802-804; 93 S Ct 1817; 36 L Ed 2d 668 (1973), is applicable to cases involving alleged violations of the FMLA. *Morgan, supra* at 1322-1323. Accordingly, the *Morgan* court stated:

> In the summary judgment context, a plaintiff initially must raise a genuine issue of material fact on each element of the prima facie case.
>
> After establishment of a prima facie case, the burden shifts to the employer to offer a legitimate nondiscriminatory reason for its employment decision. If the employer comes forward with a nondiscriminatory reason for its actions, the burden then reverts to the plaintiff to show that "there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief." [*Id.* at 1323, quoting *Randle v City of Aurora*, 69 F3d 441, 451 (CA 10, 1995) (citations omitted).]

Applying the *McDonnell Douglas* analysis in the present case, it is clear that plaintiff established a prima facie case of a violation of FMLA § 2614. It is uncontested that plaintiff took maternity leave pursuant to the FMLA and was dismissed by defendant before returning from that leave. The burden then shifted to defendant to demonstrate that there was a nondiscriminatory reason for its actions. *Morgan*,

*supra* at 1323. Defendant presented evidence of its adoption of a management restructuring plan under which plaintiff's position as director of placement and two other management positions were eliminated. Following this evidence, the burden reverted to plaintiff to establish a genuine issue of material fact regarding whether defendant's stated reason for eliminating her position was "unworthy of belief." *Id.* Plaintiff failed to carry this burden, and therefore summary disposition in favor of defendant was properly granted.

Plaintiff claims that she was dismissed "as a result of her requesting and taking a medical leave." However, plaintiff presented no evidence to contradict the affidavit of defendant's human resources director, Vicky Hilliard, stating that from 1993 through 1998, seven of defendant's employees took maternity leaves, and none of those employees were dismissed by defendant. Also, plaintiff offered no evidence to contradict Hilliard's statement that from 1992 through 1998, "there have been ninety . . . employees who have taken FMLA leaves" and "[n]one of these employees have lost their positions because of their leaves of absence." Plaintiff offered no evidence to contradict Christensen's statements that the corporate restructuring plan that resulted in the elimination of plaintiff's position was proposed in October 1995, approximately two months before plaintiff requested maternity leave pursuant to the FMLA. Furthermore, plaintiff admitted during her deposition that she had no evidence to contradict defendant's assertion that her position was eliminated as part of the management restructuring plan, rather than in response to her decision to take maternity leave. Plaintiff's theory that

defendant dismissed her because she was on leave was based on conjecture.[3] Thus, the lower court correctly concluded that plaintiff failed to show that genuine issues of material fact existed regarding whether defendant's claim that plaintiff's position was eliminated as part of a management restructuring plan was "unworthy of belief." *Id.*

Plaintiff argues that the *McDonnell Douglas* analysis is inapplicable in this case because plaintiff's claim is based on a "failure to restore" theory pursuant to FMLA § 2614, and therefore, defendant's intent in terminating her employment was irrelevant. Plaintiff's argument appears to be based on *Peters v Community Action Committee, Inc of Chambers-Tallapoosa-Coosa*, 977 F Supp 1428 (MD Ala, 1997). In *Peters*, the plaintiff claimed that her employer "reassigned [her] from one position to another and [ ] ultimately constructively discharged" her for exercising her rights under the FMLA. *Id.* at 1432. The court stated:

> To the extent that the sole question presented by the parties in an FMLA case is whether an employee has received her entitlements under the FMLA—for example, a 12-week leave or reinstatement—the employer's intent may be immaterial. . . .
>
> However, once one of the parties raises the issue of whether a right, benefit, or position is one to which the employee would have been entitled had the employee not taken the leave or whether the employer has taken adverse action against the employee for having exercised an FMLA right, the question of intent may become relevant. [*Id.* at 1433.]

---

[3] For example, contrary to plaintiff's factual assertion, the documentary evidence does not establish that Spencer applied for the community services manager position in December 1995, but merely that she applied for *a* position at that time.

The court found that because the plaintiff had alleged that the employer's actions were discriminatory and retaliatory, she had "framed her claims as turning on her employer's intent," and the *McDonnell Douglas* analysis was applicable.[4] *Id. at* 1433.

Plaintiff in the present case contends that her claim relates solely to defendant's failure to reinstate her after her leave as required under the FMLA. Thus, plaintiff argues that under the holding of *Peters*, the *McDonnell Douglas* analysis is inapplicable and defendant's reasons for failing to reinstate plaintiff should not have been considered by the trial court. We disagree. Defendant raised the issue whether plaintiff would have been entitled to her position had she not taken the leave, and, consequently, the question of intent is relevant, and the *McDonnell Douglas* analysis applies. *Id.*

Further, in count II of her complaint, plaintiff alleged that "[d]efendant violated [the FMLA] by terminating the Plaintiff, in whole or in part, as a result of her requesting and taking medical leave." Thus, plaintiff's claim was not merely that defendant failed to reinstate her as required by the FMLA, but also that defendant had "taken adverse action against [her] for having exercised an FMLA right." *Id.* During the hearing regarding the motion for summary disposition, plaintiff claimed that defendant dismissed her because "she was off pregnant." Thus, because plaintiff framed her argument in terms of defendant's intent with regard to the termination of her employment, the *McDonnell Douglas* analysis was appropri-

---

[4] *Peters* involved circumstantial evidence of discrimination rather than direct evidence, and thus, the *McDonnell Douglas* analysis was applicable. See *Peters, supra* at 1434.

ately applied by the trial court. The court properly granted defendant's motion for summary disposition of plaintiff's claim under the FMLA.

II

Plaintiff next argues that her gender discrimination claim was improperly dismissed. We disagree. In count I of her complaint, plaintiff alleged that she was treated differently by defendant because of her gender, in violation of § 202 of the CRA, MCL 37.2202; MSA 3.548(202). In *Feick v Monroe Co*, 229 Mich App 335, 338; 582 NW2d 207 (1998), this Court stated:

> Absent direct evidence of discrimination, a plaintiff may establish a prima facie case of employment discrimination by showing (1) that the plaintiff was a member of a protected class, (2) that an adverse employment action was taken against the plaintiff, (3) that the plaintiff was qualified for the position, and (4) that the plaintiff was replaced by one who was not a member of the protected class.

The *Feick* test was applied by the trial court in the present case. The court found that because "it is uncontroverted that the female plaintiff in this action was replaced by a woman, plaintiff has failed to create a material issue of fact as to the 4th element of the prima facie case." On appeal, plaintiff claims that the trial court erred in requiring plaintiff to show that she was replaced by a person who is not a member of her protected class in order to establish a prima facie case of gender discrimination. We agree.

Plaintiff conceded that she was "replaced" by a woman after being dismissed by defendant. If plaintiff's only argument had been that she was replaced for discriminatory reasons, the trial court's applica-

tion of the test in *Feick* would have been appropriate. However, plaintiff did not present a "discriminatory replacement" argument. Instead, plaintiff argued that defendant acted discriminatorily by treating her differently than a similarly situated male employee. Therefore, the trial court erred in granting summary disposition of plaintiff's gender discrimination claim in favor of defendant without considering plaintiff's argument based on a "similarly situated" theory. However, this Court will not reverse when the trial court reaches the correct result regardless of the reasoning employed. *Zimmerman v Owens*, 221 Mich App 259, 264; 561 NW2d 475 (1997). Because plaintiff failed to establish that she was treated differently than a similarly situated male employee, summary disposition was properly granted in favor of defendant.

Given plaintiff's argument that she was treated differently than a similarly situated male employee, *Town v Michigan Bell Telephone Co*, 455 Mich 688, 695; 568 NW2d 64 (1997) (opinion by BRICKLEY, J.), articulates the appropriate test for establishment of a prima facie case of gender discrimination:

> The modified *McDonnell Douglas* prima facie approach requires an employee to show that the employee was (1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position, and that (4) others, similarly situated and outside the protected class, were unaffected by the employer's adverse conduct.

Plaintiff claims that Richard Tejchma was a similarly situated male employee who was unaffected by defendant's adverse conduct. Tejchma began working for defendant as an industrial subcontract supervisor in approximately 1975. He has a bachelor's degree in sociology. After working for defendant for approxi-

mately three years, Tejchma received his certification as a rehabilitation counselor, and defendant employed him as a vocational evaluator. Tejchma testified that as a vocational evaluator, he provided diagnostic aptitude testing and vocational testing to evaluate individuals with handicaps and develop rehabilitation plans for training or community employment. Tejchma testified that he was still working for defendant as a vocational evaluator, although the title of his position has changed several times over the years.

As previously noted, Tejchma's position of director of assessment was eliminated along with plaintiff's position of director of placement when defendant implemented its restructuring plan. Christensen stated that Tejchma was given the nonsupervisory position of director of vocational evaluations after the restructuring because of his experience in "hands-on" delivery of human services.

Plaintiff's claim that she and Tejchma were similarly situated is based mainly on the fact that before the restructuring, she and Tejchma held lateral management positions directly under the rehabilitation director position on defendant's organizational chart. However, plaintiff is required to show that " 'all of the relevant aspects' " of Tejchma's employment situation were " 'nearly identical' " to those of plaintiff's situation. *Id.* at 700, quoting *Pierce v Commonwealth Life Ins Co*, 40 F3d 796, 802 (CA 6, 1994). Under the test set forth in *Town*, plaintiff failed to show that she and Tejchma were similarly situated.

Plaintiff worked for defendant for approximately two years and does not have a college degree. According to plaintiff, her duties were almost exclusively supervisory in nature. In contrast, Tejchma has

a bachelor's degree, has worked for defendant for over twenty years, and, most significantly, has over twenty years' experience in vocational evaluation, rehabilitation counseling, and assessment. Under these circumstances, plaintiff's employment situation was not "nearly identical" to that of Tejchma. See *id.* Plaintiff's two years of experience as a supervisor cannot reasonably be compared with Tejchma's credentials and twenty years of experience, including extensive experience in direct services, a key emphasis in defendant's restructuring. Therefore, we find that plaintiff failed to establish a prima facie case of discrimination and that summary disposition was properly granted in favor of defendant.

III

Plaintiff next argues that the trial court improperly granted summary disposition of her pregnancy discrimination claim. We disagree. The term "sex," as used in the CRA, includes pregnancy and childbirth. MCL 37.2201(d); MSA 3.548(201)(d); *Dep't of Civil Rights ex rel Peterson v Brighton Area Schools*, 171 Mich App 428, 436; 431 NW2d 65 (1988). Thus, the CRA prohibits discrimination based on pregnancy. *Id.* at 436-437. Pregnancy discrimination claims under the CRA may be based on either a "disparate treatment" or a "disparate impact" theory. *Id.* at 437; *Farmington Ed Ass'n v Farmington School Dist*, 133 Mich App 566, 570-571, 573; 351 NW2d 242 (1984). In the present case, summary disposition was properly granted in favor of defendant regardless of the theory.

A claim of disparate impact involves "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on

one group than another and cannot be justified by business necessity." *Id.* at 571, quoting *Int'l Brotherhood of Teamsters v United States*, 431 US 324, 335, n 15; 97 S Ct 1843; 52 L Ed 2d 396 (1977). The present case cannot be analyzed in terms of disparate impact, because it cannot be said, and plaintiff does not argue, that defendant's corporate restructuring plan was discriminatory in its impact on pregnant employees as a group. Instead, plaintiff argues that defendant specifically discriminated against her because she was pregnant, and the corporate restructuring plan was merely a pretext for that discrimination. Thus, this case is properly analyzed in terms of "disparate treatment."

Under a disparate treatment theory, "plaintiffs must make a showing that defendant had a discriminatory motive to establish a prima facie case." *Farmington Ed Ass'n, supra* at 572. As explained in detail above, plaintiff offered no direct evidence of discriminatory intent on the part of defendant and offered no evidence that undermined the legitimacy of defendant's proffered nondiscriminatory reason for its dismissal of plaintiff. Therefore, summary disposition of plaintiff's pregnancy discrimination claim was properly granted.

Affirmed.