**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0763n.06
Filed: December 16, 2008

No. 08-1192

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

WILLIAM PALUDA, ROBERT HALL,

    Plaintiffs-Appellants,

      v.

THYSSENKRUPP BUDD COMPANY,

    Defendant-Appellee.

On Appeal from the United
States District Court for the
Eastern District of Michigan
at Detroit

_____/

**Before:**     **GUY and GRIFFIN, Circuit Judges; and WATSON, District Judge.**[*]

    **RALPH B. GUY, Jr., Circuit Judge.**    Plaintiffs William Paluda and Robert Hall

appeal from the district court's decision denying plaintiff's renewed motion for remand to

state court and granting the defendant ThyssenKrupp Budd Company's motion to dismiss the

complaint. Both decisions rest on the district court's determination that the plaintiffs' state-

law age discrimination claims were preempted by both § 301 of the Labor Management

Relations Act (LMRA), 29 U.S.C. § 185, and the Employee Retirement Security Act

(ERISA), 29 U.S.C. § 1144(a). Concluding that the plaintiffs' state law claims were

completely preempted by § 301 of the LMRA, we affirm.

**I.**

---

[*]The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

Paluda and Hall were hourly employees of ThyssenKrupp Budd, an automobile supplier, at Budd's facility in Detroit, Michigan. Plaintiffs were represented by the UAW and Local 306 throughout their employment. The UAW and Budd entered into a collective bargaining agreement, which expired in October 2005 and was extended by agreement into January 2006. Pursuant to a letter agreement made part of the Collective Bargaining Agreement (referred to as Document No. 10), the Pension Plan's Mutual Consent Early Retirement Benefit was made available to employees laid off at age 40 or older as a result of a plant closing. The Mutual Consent Benefit provided for unreduced retirement benefits, temporary supplemental pension benefits, and healthcare benefits to qualifying employees.

On May 15, 2006, Budd announced its intention to cease operations at the Detroit facility. The UAW and Budd, with involvement of mediators, engaged in "effects" bargaining that concluded in a Plant Closing Agreement dated October 31, 2006, which provided varying separation payments and benefits depending on employment status and eligibility for retirement benefits under the expired CBA. Budd then notified its Detroit employees that they would be laid off or terminated as of December 4, 2006. The Plant Closing Agreement identified three main groups of employees: Group A employees, who were eligible for and chose to take normal or early retirement on or before January 1, 2007; Group B employees, who were not eligible for normal or early retirement but nonetheless met certain other criteria; and Group C employees, who did not meet the eligibility requirements for Group A or B.[1]

---

[1]The Plant Closing Agreement separately addressed various categories of inactive employees and the few employees who were within 12 months of qualifying for "30 and out" early retirement benefits.

The crux of plaintiffs' complaint is that they did not qualify as Group B employees under Paragraph 13 of the Agreement, which provided in pertinent part:

> For those employees actively working on or after May 15, 2006 who will not be eligible to retire (either Early or Normal) on or before January 1, 2007– and who meet the following criteria, the Company will provide a one-time, lump sum payment of $75,000 within 45 days of the Plant Closing Date. The criteria are as follows:
>
> Employee must be of age forty (40) or older on his/her date of layoff or termination and must have been actively at work on or after May 15, 2006.
>
> Employee must have at least ten (10) years of credited service on the date of layoff or termination.
>
> On the date of layoff or termination, the sum of the employee's age in years and months plus the years and months of seniority in the Detroit Plant must equal or exceed fifty-five (55) years.
>
> Employees who qualify for the above payment will receive Hospital Medical Surgical & Drug insurance benefits for 18 months after the month of the Plant Closing Date; Dental Insurance shall continue through January 31, 2007.
>
> Employees who meet criteria a through e above are also eligible for a certain enhanced early retirement pension benefits (the "Mutual Consent Benefit," made up of a Special Temporary Benefit for a period of years ending at age 62 and unreduced basic retirement benefits) as provided for in Section 7.1-C of the 2001 Budd – UAW Consolidated Retirement Benefit Plan, as modified by Document 10 to the expired 2001 National Contractual Bargaining Agreement. The Company will offer a one-time, lump sum payment of $50,000 to employees who resign prior to and rather than qualifying for the Mutual Consent Benefit. Such a resignation will be referred to as a "qualifying resignation." The employee's election must be made before the Plant Closing Date, and payment will be made within 45 days after the Plant Closing Date. Group B employees who do not make a qualifying resignation will receive the Mutual Consent Benefit . . . notwithstanding loss of seniority under this Plant Closing Agreement and notwithstanding receipt of any separation or other benefit under the [Supplemental Unemployment Benefit (SUB)] Plan. In addition, the 30 day pension waiting period shall be waived for such retirements.

In short, Group B employees were entitled to a $75,000 lump sum payment, health and dental benefits for a period of time, and the option to waive the Mutual Consent Early Retirement Benefit for an additional lump sum payment of $50,000.

Plaintiffs contend that they met all the criteria for Group B, except that they were a month or two shy of being 40 years of age on the date of layoff or termination. That is, plaintiffs each alleged that he was actively working on May 15, 2006, that he had at least 10 years of service, and that the sum of his age and seniority exceeded 55 years. But, Paluda and Hall did not turn 40 years of age until January 19 and February 2, 2007, respectively. As a result, they did not qualify for Group B treatment. As Group C employees, plaintiffs qualified for the same medical and dental benefits as Group B employees and enhanced Supplemental Unemployment Benefits. But, they were not eligible for any lump sum payment upon separation. Plaintiffs contend that their exclusion from treatment as Group B employees was the result of discrimination because they were *under* 40 years of age.

In February 2007, after the union refused to accept their grievances, plaintiffs filed a one-count complaint in state court alleging "reverse" age discrimination under Michigan's Elliott-Larsen Civil Rights Act (ELCRA), M.C.L.A. § 37.2202. *See Zanni v. Medaphis Physician Servs. Corp.*, 612 N.W.2d 845 (Mich. App. 2000) (holding that the ELCRA prohibition on age discrimination applies to discrimination on the basis of youth). Defendant filed a timely petition for removal, asserting preemption under the LMRA and ERISA as the basis for federal jurisdiction.[2] Plaintiffs sought remand on the grounds that removal was

---

[2]It appears, given plaintiff's allegation that Budd is a Michigan corporation with offices in Michigan, that there was no basis to assert jurisdiction based on diversity of citizenship.

improper.

The district court denied the motion for remand in an order entered June 28, 2007, rejecting plaintiffs' arguments that (1) the state law age discrimination claim was sufficiently independent of the collective bargaining agreement to avoid preemption under § 301 of the LMRA; and (2) the Plant Closing Agreement did not constitute an "employee welfare plan" for purposes of ERISA preemption. That order was promptly followed by defendant's motion to dismiss the complaint and plaintiffs' renewed request for remand. On January 9, 2008, the district court amplified its reasons for denying the motion for remand and dismissed the complaint because the plaintiffs' age discrimination claims were preempted by federal law, and plaintiffs had not asserted claims under § 301. This appeal followed.

**II.**

The appeal in this case turns on whether the defendant demonstrated that the district court had "original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States." 28 U.S.C. § 1441(b). In determining whether a claim arises under federal law for purposes of removal, we must examine the well-pleaded allegations on the face of the complaint and ignore any potential defenses. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). One of the few exceptions to the well-pleaded complaint rule is complete preemption, which "applies in circumstances in which Congress may intend the preemptive force of a federal statute to be so extraordinary that 'any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law.'" *Mikulski v. Centerior Energy Corp.*, 501

F.3d 555, 560 and 563 (6th Cir. 2007) (en banc) (quoting *Caterpillar Inc. v. Williams*, 482

U.S. 386, 393 (1987)), *cert. denied*, 128 S. Ct. 2426 (2008).

If the claims in this case are not completely preempted, then we lack jurisdiction over

the nondiverse parties. A decision on subject matter jurisdiction involving a question of law

or the application of law to the facts is reviewed *de novo*, while any factual findings

underpinning the decision are reviewed for clear error. *Mikulski*, 501 F.3d at 560.

## A.    LMRA

Section 301 of the LMRA provides that "[s]uits for violation of contracts between an

employer and a labor organization representing employees in an industry affecting commerce

. . . may be brought in any district court of the United States having jurisdiction of the parties,

without respect to the amount in controversy or without regard to the citizenship of the

parties." 29 U.S.C. § 185(a). The Supreme Court has recognized this as one of only a few

statutes that have complete preemptive force so as to authorize the removal of actions

seeking relief only under state law. *Beneficial Nat'l Bank*, 539 U.S. at 7. Section 301

governs claims founded directly on rights created by collective bargaining agreements, as

well as claims that are substantially dependent on an analysis of a collective bargaining

agreement. *Caterpillar*, 482 U.S. at 394; *see also Lingle v. Norge Div. of Magic Chef, Inc.*,

486 U.S. 399, 405-06 (1988) (holding that state-law claim that discharge was in retaliation

for filing workers' compensation claim was not preempted by § 301).

Based on the Supreme Court's guiding principles, this court has articulated a two-step

inquiry for determining whether a state law claim is sufficiently independent of the collective

bargaining agreement to survive complete preemption under § 301 of the LMRA. *Alongi v. Ford Motor Co.*, 386 F.3d 716, 724 (6th Cir. 2004) (citing *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994)). That is, a state-law claim is preempted by § 301 either: (1) if "the rights claimed by the plaintiff were created by the collective bargaining agreement [rather than] state law," or (2) if "resolving the state-law claim would require interpretation of the terms of the collective bargaining agreement." *Mattis v. Massman*, 355 F.3d 902, 906 (6th Cir. 2004) (citing *DeCoe*, 32 F.3d at 216-17). With respect to the latter inquiry, we ask whether a plaintiff can prove the elements of his state-law claim without contract interpretation. *DeCoe*, 32 F.3d at 216.

While the right asserted by plaintiffs to be free from discrimination based on age does not arise from the contract, defendant argues that resolution of the plaintiffs' "reverse" age discrimination claims would require contract interpretation. As noted earlier, Michigan's civil rights statute makes it unlawful for an employer to discriminate against an individual with respect to employment because of age (or youth). Plaintiffs liken their age discrimination claims to the retaliatory discharge claim that the Court in *Lingle* found did not require interpretation of the collective bargaining agreement, but turned on "purely factual questions pertain[ing] to the conduct of the employee and the conduct and motivation of the employer." 486 U.S. at 407. Typically, the Court explained, a state court can resolve a claim of discriminatory or retaliatory discharge without interpreting the "just cause" language of a collective bargaining agreement. *Id*. at 413; *see also Alongi*, 386 F.3d at 726-27 (finding retaliatory discharge claim was not preempted where plaintiffs alleged that they were not

rehired by defendant in retaliation for earlier objections to the use of unapproved parts in violation of federal standards).

In contrast to typical claims of retaliatory or discriminatory discharge, however, plaintiffs have alleged discrimination in the allocation of benefits under the Plant Closing Agreement. As defendants argue, plaintiffs' *prima facie* showing of age discrimination would require proof that plaintiffs were similarly situated to those employees who qualified for treatment as Group B employees under the Plant Closing Agreement and, in turn, whether they were eligible for Mutual Consent Early Retirement Benefits as defined by the Collective Bargaining Agreement, as modified by letter agreement (Document No. 10). *See Smith v. Goodwill Indus. of W. Mich., Inc.*, 622 N.W.2d 337, 342-43 (Mich. Ct. App. 2000) (stating disparate treatment discrimination claim requires proof that plaintiff was treated differently than other similarly situated employees). Since plaintiffs' age discrimination claims are substantially dependent on analysis of a collective bargaining agreement, they are completely preempted by § 301 of the LMRA. That being the case, the district court did not err either in denying the plaintiffs' motion to remand or granting defendant's motion to dismiss the preempted state-law claims.

## B.    ERISA

The petition for removal averred that plaintiffs claims were also completely preempted by the civil enforcement provisions of § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), as recognized in *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 66 (1987). However, defendant then argued, and the district court specifically found, that the state-law

claims were preempted under § 514(a) of ERISA, 29 U.S.C. § 1144(a), because those claims "related to" an employee benefit plan. Removal and preemption are distinct concepts, however, and this court has held that preemption under § 514(a) does not convert the state law claim into a federal action subject to removal. *Wright v. Gen. Motors Corp.*, 262 F.3d 610, 614 (6th Cir. 2001); *Warner v. Ford Motor Co.*, 46 F.3d 531, 534 (6th Cir. 1995) (en banc).

Having concluded that § 301 completely preempts plaintiffs' state-law claims, providing grounds for removal of the action to this court, it is not necessary to decide in the first instance whether plaintiffs' claims were also preempted either by § 514(a) or § 502(a) of ERISA. Accordingly, we do not address plaintiffs' central contention on appeal that it was clearly erroneous for the district court to find that the Plant Closing Agreement was an employee welfare benefit plan governed by ERISA. *See Kolkowski v. Goodrich Corp.*, 448 F.3d 843, 848 (6th Cir. 2006)*; Cassidy v. Akzo Nobel Salt, Inc.*, 308 F.3d 613, 615-17 (6th Cir. 2002).[3]

---

[3]Plaintiffs also accuse the district court of misapprehending their claims as alleging violation of the ADEA, rather than Michigan's ELCRA, because the order denying the renewed motion for remand concluded that plaintiffs could not establish a claim for "reverse" age discrimination under the federal statute. There can be no doubt, however, that the district court understood plaintiffs to be asserting state-law "reverse" discrimination claims. Although the district court did not fully elaborate, it is clear from the record that the district court was concerned with whether ERISA preemption under § 514(a) was rendered ineffective by the "savings" provision in § 514(d), which states that § 514(a) shall not be "construed to alter, amend, modify, invalidate, impair, or supercede any law of the United States." 29 U.S.C. § 1144(d). Section 514(a) will not preempt state antidiscrimination laws to the extent they prohibit practices made unlawful by Title VII; but, federal law would not be impaired by preemption of state laws that prohibit employment practices that are *lawful* under Title VII. *Shaw v. Delta Air Lines, Inc.*, 463 U.S, 85 (1983). Since, as the district court recognized, the ADEA does not afford protection to younger workers, federal law would not be impaired by preemption of the plaintiffs' state law claims alleging discrimination based on their youth. *See Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581 (2004).

**AFFIRMED**.