# STATE OF MICHIGAN

# COURT OF APPEALS

DENISE ANFIELD,

　　　　　Plaintiff-Appellant,

v

SECRETARY OF STATE,

　　　　　Defendant-Appellee.

UNPUBLISHED
January 22, 2015

No. 317984
Wayne Circuit Court
LC No. 12-005783-CD

Before: MURRAY, P.J., and SAAD and K. F. KELLY, JJ.

PER CURIAM.

In this employment discrimination case, plaintiff appeals as of right the trial court's order granting defendant Secretary of State's motion for summary disposition and dismissing her wrongful termination claim filed under the Elliot-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq*. Plaintiff was terminated for her role in an acquaintance's fraudulently obtaining a commercial driver's license with a hazardous materials endorsement. Plaintiff claims she made a mistake and that defendant did not fire others similarly situated, but instead fired her because she is black and a woman. Because plaintiff failed to present the evidence necessary to establish a prima facie case of disparate treatment, we affirm.

## I. BACKGROUND

As the following makes clear, the facts of this case are straightforward. Plaintiff is a former employee of the Department of State. Her nearly 24-year career with the Department started in 1986 and ended with her termination on October 22, 2010. At the time she was fired, plaintiff served as a "DOS Aide-E" at the Secretary of State branch office on East Eight Mile Road in Detroit. A DOS Aide-E is a clerk whose job duties encompass assisting customers with transactions including, among others, the issuance of driver's licenses and the processing of related documents. Relevant to this case is plaintiff's role in processing documents related to the issuance of a Commercial Driver's License (CDL) for an acquaintance. Before relating those details, however, a brief explanation of that multi-step process bears mention.

The process to obtain a CDL commences when the applicant takes a knowledge test, administered by a clerk like plaintiff. Upon completion of the test (and the fulfillment of certain other requirements), the applicant obtains a temporary instruction permit and reports to a third-party vendor (also called a third-party tester or "TPT") for a driving test. Successful completion of the driving test results in the applicant's receiving a Driving Skills Test Certificate, known as

-1-

a DSTC-TPT-010 ("DSTC"). The applicant then presents the DSTC to a clerk for validation and processing. At this time, the clerk also performs any federal checks necessary to obtain certain endorsements, such as a hazardous materials endorsement. If everything is proper, the clerk takes the applicant's picture and issues the final CDL by mail. It was plaintiff's participation in this process with an acquaintance named Stephen Belser that ostensibly led to her firing.

The conduct in question stretches back to November 26, 2008. On that day, Belser returned to plaintiff's branch office to obtain his CDL. He had apparently completed his driving test earlier, having already passed the knowledge test twice, and on this occasion presented plaintiff with his DSTC. Plaintiff processed the DSTC and gave Belser a "paper license" which he could presumably use until receiving the final CDL in the mail. The license contained a hazardous materials endorsement.

The next workday, plaintiff's supervisor informed her that Belser's DSTC was a copy, and clerks are only to accept originals. So plaintiff contacted Belser, who delivered another DSTC to plaintiff the following morning in the branch office parking lot before work started. This DSTC was altered, however—a fact plaintiff knew because Besler indicated "he had made some changes" when plaintiff asked why he didn't provide this version in the first place. Plaintiff accepted the DSTC anyway, which she gave to her supervisor with the acknowledgment, "It looks like it's been altered."

An internal investigation ensued. The first certificate was found counterfeit, the second altered. The investigation ultimately determined that plaintiff had "knowingly ignored" a questionable DSTC as a favor to Belser. The investigation concluded that as a consequence, Belser fraudulently obtained a CDL rendering him eligible to transport hazardous materials, which posed a significant risk to public safety. Plaintiff's conduct in this matter allegedly violated several provisions of the Department of State Employees Handbook and Civil Service Rules, and she was terminated on October 22, 2010.[1] Plaintiff filed a grievance, maintaining that she had simply made a mistake, but an arbitrator subsequently upheld plaintiff's termination.

## II. PROCEEDINGS

Acting in propria persona, plaintiff filed a two-count complaint on April 30, 2012. Only Count II is germane to this appeal.[2] That count specifically alleges disparate treatment based on race and gender discrimination in violation of the ELCRA. During discovery, plaintiff identified four Department employees whom she claimed either were not fired or were permitted to return to work despite conduct similar to her own. Three were men—two white and one black, while

---

[1] Plaintiff's violations included: wanton or willful neglect in the performance of her duties, violation of the duty to report known fraudulent activity, providing favors to the general public, conduct unbecoming an employee, and violation of the prohibition against processing transactions for friends or relatives.

[2] Count I impugned the arbitrator's impartiality and was dismissed following defendant's first motion for summary disposition.

the fourth was a white woman. Their alleged misconduct variously included taking bribes, accepting forged documents, and waiting on family members.

At the close of discovery, defendant moved for summary disposition. Defendant argued that plaintiff based her allegations on inadmissible hearsay and had otherwise failed to establish a prima facie case of disparate treatment where the other employees' situations involved different supervisors, job titles, work locations, and conduct. Defendant added that public safety legitimately motivated its decision to fire plaintiff.

Plaintiff responded—through counsel this time—that other employees retaining their jobs despite accepting bribes, accepting forged documents, and waiting on family members was sufficiently similar to her own conduct to expose the real reason for her firing: her race and her gender. Plaintiff cited as proof the fact that the same ultimate decision-maker, i.e., the Human Resources Office, was involved in all these employment decisions, and that defendant waited until two years after the incident to fire her, which decision defendant based on an inadequate investigation and Belser's inconsistent statements.

Following a hearing, the trial court rejected plaintiff's arguments. The court noted that three of the employees at issue held positions different than plaintiff's and the fourth had engaged in substantially different and less egregious conduct that did not endanger public safety. Accordingly, the court concluded plaintiff could not establish a prima facie case of disparate treatment. Defendant's motion was granted and plaintiff's claim was dismissed. Plaintiff then moved for reconsideration, this time identifying the misconduct of a fifth co-worker, but the court denied that motion as well. Plaintiff now presents this appeal.

## III. ANALYSIS

Plaintiff maintains she established a prima facie case of disparate treatment because other Department employees retained their jobs despite engaging in substantially similar conduct at least as serious as her own.

## A. STANDARD OF REVIEW

The trial court granted summary disposition under MCR 2.116(C)(10). We review a trial court's ruling on a motion for summary disposition under that subrule de novo. *McCoig Materials, LLC v Galui Const, Inc*, 295 Mich App 684, 693; 818 NW2d 410 (2012). "A motion for summary disposition pursuant to MCR 2.116(C)(10) should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Curry v Meijer, Inc*, 286 Mich App 586, 590; 780 NW2d 603 (2009) (citation omitted). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). In reviewing this issue, we consider all of the pleadings, affidavits, depositions, admissions and other documentary evidence. *Corely v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). "Where the burden of proof rests with the nonmoving party, that party must respond with documentary evidence to demonstrate the existence of a genuine issue of material fact for trial." *Curry*, 286 Mich App at 591 (citation omitted). Such evidence must be admissible in form; opinions,

conclusory denials, unsworn averments, and inadmissible hearsay won't cut it. *SSC Assoc Ltd Partnership v Gen Retirement Sys of the City of Detroit*, 192 Mich App 360, 364; 480 NW2d 275 (1991). If a nonmoving party's response is deficient in this way, judgment for the moving party results. *Curry*, 286 Mich App at 591 (citation omitted).

To the extent plaintiff raises arguments contained in her motion for reconsideration, our review is for an abuse of discretion. *Charbeneau v Wayne Co Gen Hosp*, 158 Mich App 730, 733; 405 NW2d 151 (1987).

## B. THE ELCRA

The ELCRA forbids, among other things, an employer from discharging an individual because of her race or age. MCL 37.2202(1)(a). Two broad categories of claims exist under this section: "disparate treatment" and "disparate impact" claims. *Wilcoxon v Minnesota Mining & Mfg Co*, 235 Mich App 347, 358; 597 NW2d 250 (1999). Plaintiff alleges only the former.

A claim of disparate treatment is a claim for intentional discrimination. *Meagher v Wayne State Univ*, 222 Mich App 700, 709; 565 NW2d 401 (1997). It may be proven by direct or circumstantial evidence. *Sniecinski v Blue Cross & Blue Shield of Mich*, 469 Mich 124, 132; 666 NW2d 186 (2003). Because plaintiff presents only circumstantial evidence, we employ the familiar *McDonnell Douglas* burden-shifting test. *Id*. at 133-134, citing *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973). The test has three parts: (1) the plaintiff must first make out a prima facie case of discrimination; (2) if the plaintiff is successful, the burden shifts to the defendant to put forth a legitimate, nondiscriminatory reason for its actions; (3) if the defendant presents such a reason, the burden shifts back to the plaintiff to expose the proffered reason as a mere pretext. *Sniecinski*, 469 Mich at 134.

To establish a prima facie case of disparate treatment employment discrimination, the employee must show, among other things, that "others, similarly situated and outside the protected class [of which the employee is a member], were unaffected by the employer's adverse conduct." *Town v Michigan Bell Tel Co*, 455 Mich 688, 695; 568 NW2d 64 (1997) (opinion by BRICKLEY, J.).[3] Another employee is similarly situated if "all of the relevant aspects of the [other employee's] employment situation were nearly identical to those of the plaintiff's situation." *Smith v Goodwill Indus of West Mich, Inc*, 243 Mich App 438, 449; 622 NW2d 337 (2000) (quotation marks and citations omitted). A showing that "all relevant aspects" were nearly identical does not mean there must be "an exact correlation" between the employment situations. *Ercegovich v Goodyear Tire & Rubber Co*, 154 F3d 344, 352 (CA 6, 1998) (citation

---

[3] Although a prima facie case of employment discrimination contains four elements, defendant contests only the one listed above. See *Town*, 455 Mich at 695 (a prima facie case of employment discrimination requires evidence that the employee was "(1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position, and that (4) others, similarly situated and outside the protected class, were unaffected by the employer's adverse conduct.").

omitted).[4]  Rather, "the plaintiff and the employee with whom the plaintiff seeks to compare himself must be similar in all of the *relevant* aspects."  *Id*. (emphasis in original, citation omitted); accord *Town*, 455 Mich at 699-700, and *Smith*, 243 Mich App at 449.  While courts must make a case-by-case determination on this score, relevant considerations in the disciplinary context may include whether the employees dealt with the same supervisor, were subject to the same standards, or were engaged in the same conduct without circumstances that distinguish their conduct or mitigate their employer's treatment of them for it.  *Id*., quoting *Mitchell v Toledo Hosp*, 964 F2d 577, 583 (CA 6, 1992).

Before addressing plaintiff's specific claims, we reject plaintiff's preliminary argument that the trial court improperly required her to demonstrate that she was similarly situated to other employees "in all respects" and failed to apply the allegedly broader "in all relevant aspects" analysis of *Ercegovich* to a disciplinary case like this one.  The trial court's opinion flatly contradicts this accusation.  Indeed, the court not only articulated the correct standard, but also reviewed the relevant conduct and job functions at issue.  *Smith*, 243 Mich App at 449-450.  Moreover, the *Ercegovich* decision, which is not binding, *Chambers v Trettco, Inc*, 463 Mich 297, 313; 614 NW2d 910 (2000), sets forth a standard no different than what we articulated in *Smith*.  Plaintiff's argument is without merit.

## C.  PLAINTIFF'S PRIMA FACIE CASE

In her response below, plaintiff identified four coworkers as similarly situated employees who were not fired or were permitted to return despite their misconduct: (1) Eric Semenjunk, (2) Joe Toth, (3) Marvin Berry, and (4) Jenna Jean.  Plaintiff claims both race and gender discrimination with respect to Semenjunk and Toth, gender discrimination with respect to Berry, and race discrimination with respect to Jean.  None of the evidence plaintiff cites was properly submitted with her response to defendant's summary disposition motion, however, since it all suffers from the same fatal flaw: inadmissibility.

Indeed, by plaintiff's own admission, the *only* way she knows of her co-workers' misconduct is through generic "state gossip."  Even worse, she offers *nothing* about the circumstances of these nondescript disclosures, let alone the specific sources of it.  At least one federal court has aptly described such "stray gossip" as "rank hearsay," *Clark v APAC Mid-S, Inc*, 912 F Supp 2d 1273, 1291 (ND Ala, 2012), and we are hard pressed to conclude otherwise here.  See *In re Utrera*, 281 Mich App 1, 18; 761 NW2d 253 (2008) (statements made out of court and offered for their truth are generally inadmissible hearsay absent an exception).  Absent more, then, this evidence is inadmissible and incapable of sustaining plaintiff's burden.  *SSC Assoc Ltd Partnership*, 192 Mich App at 364.

---

[4] Michigan courts may look to federal court interpretations of the counterpart federal statute when interpreting provisions of the ELCRA.  *Chambers v Trettco, Inc*, 463 Mich 297, 313; 614 NW2d 910 (2000).

While we may affirm on this ground alone,[5] it bears mention that the alleged substance of this gossip wouldn't help plaintiff anyway. As for the men, plaintiff accuses Semenjunk of accepting bribes while administering road tests, and accuses Toth and Berry of accepting forged documents from "foreigners." However, even if true, plaintiff admits that, except for several isolated exceptions, each worked at a different location than her and held a different position than her (they were managers). And while plaintiff alleges that these co-workers were subject to the same investigation, she cites no evidence to support these contentions. Her *ipse dixit* is not enough. *Mudge v Macomb Co*, 458 Mich 87, 104; 580 NW2d 845 (1998).

In contrast, defendant points to the Department Handbook, which specifically provides that supervisory employees are subject to different standards. Even the Handbook's list of terminable offenses reveals that the proscribed conduct ostensibly applying to all employees "*may* result in immediate discharge." (Emphasis added.) The record reveals the results of the Department's thorough investigation of plaintiff that led to her termination. But it contains no such information concerning the circumstances of the other male employees' misconduct. Thus, the evidence is insufficient to make out a prima facie case, let alone undercut defendant's proffered reason for filing plaintiff.[6]

Plaintiff's reliance on Jean's situation fares no better. While during her deposition plaintiff accused Jean of waiting on family members, she accuses Jean of a whole host of wrongdoings on appeal (including, for example, falsifying documents and rendering special favors to the public). While those wrongdoings were set forth in an exhibit presented below, plaintiff did not argue them before the trial court. Her argument on this score is therefore not properly before us. *Adam v Sylvan Glynn Golf Course*, 197 Mich App 95, 98; 494 NW2d 791 (1992).

Regardless, Jean *was* fired for her misconduct, and only subsequently reinstated after an arbitration hearing. Her continued employment therefore was not defendant's decision, and it cannot constitute disparate treatment. Nevertheless, processing transactions for family members, even fraudulently, is hardly akin to enabling the potential transport of hazardous materials. Where plaintiff otherwise introduced no evidence that Jean was treated differently than her, this argument is a nonstarter.

---

[5] See *Jackson Co Hog Producers v Consumers Power Co*, 234 Mich App 72, 82; 592 NW2d 112 (1999) ("This Court may affirm a decision of a trial court for reasons different than those relied on by the trial court.").

[6] Plaintiff's only argument that defendant's proffered reason, i.e., public safety, was not based in fact or actually motivated its decision is the nearly two-year delay between the incident and her termination. But this alone does not cast doubt on defendant's reason, and is certainly not tethered to any discriminatory animus. To the contrary, it appears a thorough investigation occasioned this delay, which was appropriate considering the drastic disciplinary measure employed.

Finally, plaintiff identifies the misconduct of a fifth co-worker by the name of Nancy Luna-Rodriguez whom she claims was similarly situated to her. Luna-Rodriguez was apparently disciplined for botching too many cashier transactions. But this is not what plaintiff argued in her response below. Instead, plaintiff claimed that discovery related to this employee was incomplete. It was not until her motion for reconsideration that plaintiff raised the arguments she now presents on appeal. An attempt like this to take a second bite at the apple is improper, however, and the trial court was right to preclude it. See *Charbeneau*, 158 Mich App at 733 ("We find no abuse of discretion in denying a motion resting on a legal theory and facts which could have been pled or argued prior to the trial court's original order.").

But even setting that aside, mishandling cash is not the same as participating in fraud that puts public safety at risk. And, again, plaintiff failed to present evidence of other circumstances surrounding Luna-Rodriguez's disciplinary investigation and process, let alone of her race—a key component in any racial discrimination claim. Plaintiff and Luna-Rodriguez are not similarly situated on this record.

Affirmed.

/s/ Christopher M. Murray
/s/ Henry William Saad
/s/ Kirsten Frank Kelly